UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

ANA BEATRIZ LONTRA JOBIM;        :     No. 05 CIV 3527 (PAC)
MARIA LUIZA HELENA LONTRA     :
JOBIM; PAULO HERMANNY JOBIM;   :
and ELIZABETH HERMANNY JOBIM,   :
                                    :
                Plaintiffs,    :
                                      :
       -against-          :
                                      :
SONGS OF UNIVERSAL INC.,        :
                                      :
            Defendant.    :

----------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT SONGS OF UNIVERSAL INC.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 2

I.     JOBIM'S AGREEMENTS WITH UNIVERSAL. ..................................................... 2

II.    THE JOBIM PLAINTIFFS DO NOT OWN THE CONTRACT RIGHTS THEY
SEEK TO ENFORCE ........................................................................................................... 3

       A.    Jobim's Assignment of Rights to Jobim Music ......................................... 4

       B.    The Real Party in Interest Objection ........................................................ 5

ARGUMENT ......................................................................................................................... 6

I.     THE LEGAL STANDARD ...................................................................................... 6

       A.    Rule 17(a) Requirements ........................................................................... 6

       B.    New York Substantive Law is Controlling. ............................................... 7

       C.    Summary Judgment Standard .................................................................... 8

II.    JOBIM MUSIC IS THE REAL PARTY IN INTEREST UNDER THE UNIVERSAL
AGREEMENTS, NOT THE PLAINTIFFS. ......................................................................... 9

       A.    Jobim Assigned His Copyrights and Contract Rights to Jobim Music. ................. 9

       B.    Subsequent Conduct Confirms that the Jobim Music Agreement Transferred
Jobim's Copyrights and Contract Rights ............................................... 11

       C.    Ratification by Jobim Music is Not a Proper Cure for the Plaintiffs' Failure to
Join the Real Party in Interest. .............................................................. 13

       D.    The Other Cure Procedures Provided by Rule 17(a) are Not Available to the
Plaintiffs. ................................................................................................. 16

CONCLUSION ..................................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Advanced Magnetics, Inc. v. Bayfront Partners*, 106 F.3d 11 (2d Cir. 1997) ...............................18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................9

*Automated Information Processing, Inc. v. Genesys Solutions Group, Inc.*, 164 F.R.D. 1 (E.D.N.Y. 1995).........................................................................................................17, 18

*Bassis v. Universal Line, S.A.*, 436 F.2d 64 (2d Cir.1970) .............................................................9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................8

*Del Re v. Prudential Lines, Inc.*, 669 F.2d 93 (2d Cir. 1982).......................................13, 14, 17, 19

*Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27 (2d Cir. 1982) ...............................14

*Feist v. Consolidated Freightways Corp.*, 100 F. Supp. 2d 273 (E.D. Pa. 1999), *aff'd*, 216 F.3d 1075 (3d Cir. 2000) (unpublished table decision) ...........................................................17

*Hanna v. Plumer*, 380 U.S. 460 (1965) .......................................................................................7

*Jackson v. Broadcast Music, Inc.*, No. 04 Civ. 5948 (TPG), 2006 WL 250524 (S.D.N.Y. Feb. 1, 2006) ....................................................................................................................11

*Lans v. Gateway 2000 Inc.*, 84 F. Supp. 2d 112 (D.D.C. 1999), *aff'd*, 252 F.3d 1320 (Fed. Cir. 2001)..................................................................................................................17, 19

*Motta v. Resources Shipping & Enterprises Co.*, 499 F. Supp. 1365 (S.D.N.Y. 1980) ...............16

*OSRecovery, Inc. v. One Group International, Inc.*, 380 F. Supp. 2d 243 (S.D.N.Y. 2005).....7, 17

*Parker & Waichman v. Napoli*, 29 A.D.3d 396, 815 N.Y.S.2d 71 (1st Dep't 2006) .....................7

*Rock Drilling Local Union No. 17 v. Mason Hanger Co.*, 217 F.2d 687 (2d Cir. 1954) ............ 6-7

*Rutgerswerke AG & Frendo S.P.A. v. Abex Corp.*, No. 93 Civ. 2914 (JFK), 2002 WL 1203836 (S.D.N.Y. June 4, 2002).......................................................................................9

*Schalk v. Transport Workers Union of America*, No. 03 Civ. 8045 (PAC), 2007 WL 1310171 (S.D.N.Y. May 3, 2007)..........................................................................................8

*Scheufler v. General Host Corp.*, 126 F.3d 1261 (10th Cir. 1997)..............................................15

*Scotto v. Almenas*, 143 F.3d 105 (2d Cir.1998) ..........................................................................8

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber*, 407 F.3d 34 (2d Cir. 2005)...............7, 13, 15, 16

*TeeVee Toons, Inc. v. Gerhard Schubert GmbH*, No. 00 Civ. 5189 (RCC), 2006 WL 2463537 (S.D.N.Y. Aug. 23, 2006) ........................................................................8

*United States for Use and Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070 (9th Cir. 1989)............15

*Wein v. Fensterstock*, No. 04 Civ. 4640, 2004 WL 2423684 (S.D.N.Y. Oct. 28, 2004)................8

*Weissmann v. Freeman*, 868 F.2d 1313 (2d Cir. 1989) ................................................14

## STATUTES AND RULES

17 U.S.C. § 106.............................................................................................10

28 U.S.C. § 2072.......................................................................................1, 13

Fed. R. Civ. P. 17(a) ........................................................................................7

Fed. R. Civ. P. 44.1 .........................................................................................9

Fed. R. Civ. P. 52(a) ......................................................................................14

Fed. R. Civ. P. 56(c) ........................................................................................8

## MISCELLANEOUS

9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2444 (3d ed. 1995) ..................................................................................................9

June F. Entman, *Compulsory Joinder of Compensating Insurers: Federal Rule of Civil Procedure 19 and the Role of Substantive Law*, 45 Case Wes. L. Rev. 1 (1994)..............14, 16

## PRELIMINARY STATEMENT

In the mid-1960s the Brazilian songwriter Antonio Carlos Jobim ("Jobim") entered into a series of music publishing agreements with the predecessors of Defendant Songs of Universal Inc. ("Universal"), pursuant to which Universal continues to exploit various musical compositions written or co-written by Jobim (the "Universal Agreements"). In this action, Jobim's surviving heirs claim that they have succeeded to Jobim's rights in the Universal Agreements, and that Universal has breached those agreements by not paying all of the royalties that are allegedly due. The problem with Plaintiffs' argument is that they did not succeed to Jobim's rights under the Universal Agreements. Indeed, prior to his death in 1994, Jobim assigned those rights to one of his corporations, Jobim Music Ltda. ("Jobim Music"). Therefore, when Jobim died, his heirs did not inherit any rights in the Universal Agreements. Accordingly, Plaintiffs have no right to assert claims of breach against Universal, and, for purposes of Federal Rule of Civil Procedure 17(a), they are not the real parties in interest in this action.

Confronted with the fact that they are not the real parties in interest, Plaintiffs have instead tried to do an end-run around their lack of state-law contract rights by proffering a "ratification" of this action by Jobim Music pursuant to Rule 17(a). This solution is improper as a matter of law since the Rules Enabling Act, 28 U.S.C. § 2072, expressly prevents Plaintiffs from using Rule 17(a) to create state law rights where none otherwise exist. The law is clear that Plaintiffs cannot maintain this action – even with a ratification from Jobim Music – since they themselves have no state-law contract rights to enforce.

Aside from not being able to rely on the ratification procedure of Rule 17(a), Plaintiffs have not and cannot solve their standing problem by utilizing the two other cure procedures provided by Rule 17(a); namely, joinder and substitution. First, joinder suffers from the same shortcomings as ratification in that Plaintiffs would still be prosecuting claims they have no

1

standing under state law to assert.  Second, Plaintiffs cannot substitute Jobim Music since they

have not shown that the failure to do so was the result of an honest and understandable mistake.

But whether they can ever make this showing is irrelevant since they flat out refuse to substitute

Jobim Music as the plaintiff in this action in place of themselves.  Plaintiffs are determined to

proceed in their own name.

At this point, it is not enough for Plaintiffs' to simply insist that they are permitted to

continue to act as the plaintiffs in this action.  In order to defeat summary judgment, they now

must show that the law allows it, and this they cannot do.

## STATEMENT OF FACTS

### I.   JOBIM'S AGREEMENTS WITH UNIVERSAL.

Between 1962 and 1968, Antonio Carlos Jobim entered into a series of publishing

agreements with Universal regarding seven of his compositions (the "Compositions").  *See*

UMG's Local Civil Rule 56.1 Statement of Undisputed Facts[1] ("R. 56.1 Statement") at ¶ 2.  The

Universal Agreements gave Universal the right to exploit the Compositions in certain territories

in exchange for the payment of royalties.[2]  Universal's rights under the Universal Agreements

include granting mechanical and synchronization licenses; publishing sheet music; granting

performance licenses; and otherwise promoting and administering the Compositions in the

defined territories.  The Universal Agreements provide that they are to endure for "the original

term of copyright and all extensions and renewals thereof, which now are or which may hereafter

come," and currently are in force.  R. 56.1 Statement at ¶ 2.

---

[1] The R. 56.1 Statement incorporates and references evidence summarized in and annexed to the
Declaration of Andrew H. Bart in Support of Universal's Motion for Summary Judgment dated
July 26, 2007, as well as the Declaration of Dr. João Carlos Müller Chaves dated July 25, 2007,
attached as Exhibit M to the Bart Declaration, to which this Court is also respectfully referred.
[2] Although the parties entered into a separate contract for each song, the contracts do not vary in
any way that is material to the instant motion.  Universal will therefore refer to the Universal
Agreements collectively for purposes of this motion.

In 1994, Jobim passed away.  R. 56.1 Statement at ¶ 5.  At the time of his death, Universal had exploited the Compositions pursuant to the Universal Agreements for thirty years, and regularly remitted Jobim's royalties to his accounting firm, E.D. Loewenwarter Co., without incident or dispute.  R. 56.1 Statement at ¶ 4.  Following Jobim's death, Universal continued to remit royalties to Loewenwarter Co. on behalf of "Antonio Carlos Jobim," and otherwise maintained its practices under the Universal Agreements.  R. 56.1 Statement at ¶ 6.

In the mid-1990s, Plaintiffs began asserting various complaints regarding Universal's administration of the Universal Agreements.  Some of the complaints arose from Universal's settlement of disputes with Norman Gimbel, the creator of the English lyrics to several of the Compositions, regarding Gimbel's share of royalties.  Others addressed Universal's longstanding accounting practices under the Universal Agreements.  Universal and the Plaintiffs engaged in protracted settlement negotiations throughout the late 1990s and early 2000s.  Those negotiations were ultimately unsuccessful, and in 2005, Plaintiffs filed this suit.  *See generally* Am. Compl. Intro, ¶ 55; R. 56.1 Statement at ¶ 8.

In this action, Plaintiffs assert that, upon Jobim's death in 1994, they "succeeded to his rights in the Compositions and under the Agreements" through the operation of Jobim's will. Am. Compl. ¶ 31; R. 56.1 Statement at ¶ 7.  The Jobims assert breach of contract claims against Universal which they base on Universal's "undisputed obligations to plaintiffs (as Jobim's heirs and successors)."  *See* Am. Compl. Intro.; R. 56.1 Statement at ¶¶ 7-8.

## II.   THE JOBIM PLAINTIFFS DO NOT OWN THE CONTRACT RIGHTS THEY SEEK TO ENFORCE.

In discovery, Universal sought documents that would allow it to verify Plaintiffs' allegation in the Amended Complaint that they had in fact succeeded to Jobim's rights in the Universal Agreements and thus were entitled to enforce those agreements.  However, the

documents produced by Plaintiffs demonstrated that they did not own the rights that they are seeking to enforce in this case. Those rights are owned by Jobim Music.

### A.   Jobim's Assignment of Rights to Jobim Music.

Jobim Music is a Brazilian corporation that Jobim formed in 1990. R. 56.1 Statement at ¶ 9. In 1993, Jobim and Jobim Music entered into a "Contract of Assignment of Financial Copyright Rights" (the "Jobim Music Agreement"). R. 56.1 Statement at ¶ 10.[3] In the Jobim Music Agreement, Jobim "assign[ed] and transfer[ed]" his copyrights and all of his rights to receive moneys from the exploitation of his works to Jobim Music. R. 56.1 Statement at ¶ 11. Given the stated purpose of the Jobim Music Agreement to "centralize the payments and receipts originating from [Jobim's musical activities] in a modern corporate administration that would allow [Jobim] to dedicate himself only to cultural and artistic activities," Bart Declaration Ex. E, it is apparent that the Jobim Music Agreement was created because Jobim wanted to be an artist and not a businessman. The Jobim Music Agreement transferred to Jobim Music all the rights Jobim was able to transfer in his catalogue of compositions and left Jobim solely with his "moral rights" that Jobim was not permitted by law to assign. *See id.*; R. 56.1 Statement at ¶¶ 11-13. Jobim was represented by attorney Sylvia Gandelman, who drafted the Agreement, in the transaction. *See* Bart Declaration Ex. Q at 116.[4]

---

[3] The Jobim Music Agreement is written in Portuguese, as are other relevant documents. Universal has commissioned a certified translation of the Agreement. Bart Declaration at ¶¶ 8, 12. Both the Portuguese and English versions of the Jobim Music Agreement are attached as exhibits to the Bart Declaration.

[4] At the time that the Jobim Music Agreement was executed, Jobim owned 99% of Jobim Music, and his wife, Ana, held the remaining 1%. *See* Bart Declaration Ex. Q at 105. Jobim Music is currently owned by Jobim's four surviving heirs, who are also the Plaintiffs in this case. *Id.* at 151-52.

Jobim died in December 1994, just over a year after he executed the Jobim Music Agreement. R. 56.1 Statement at ¶ 5. Jobim's will, drafted in 1988, purported to devise Jobim's copyrights in equal parts to his wife and children, and his remaining assets to his wife Ana. R. 56.1 Statement at ¶ 7. However, because Jobim had entered into the Jobim Music Agreement and transferred his copyrights to Jobim Music prior to his death, those rights did not pass to his heirs by operation of his will, nor could they. *See* Bart Declaration Ex. M at ¶ 11. Notably, upon Jobim's death, the probate court in Brazil treated Jobim Music as the owner of the assets covered by the Universal Agreements. Indeed, the probate court oversaw a valuation of Jobim Music's assets and expressly included in that calculation the income that Jobim Music had received from Jobim's catalog in the period following the execution of the Jobim Music Agreement. R. 56.1 Statement at ¶ 17. In other words, the probate recognized and understood that at the time of Jobim's death, Jobim Music owned Jobim's contract and copyright rights. This interpretation is further corroborated by the fact that in subpublishing contracts entered into by Jobim Music, it represented that it was the sole owner of Jobim's "worldwide copyrights". R. 56.1 Statement at ¶ 16. Finally, there is no evidence, and Plaintiffs do not assert, that Jobim Music ever transferred any of the rights under the Universal Agreement to them individually.

### B.    The Real Party in Interest Objection.

Upon receiving the documents indicating that the Plaintiffs did not own the rights they assert in their Amended Complaint, Universal raised with Plaintiffs' counsel the fact that they did not have standing to pursue this action.[5] Bart Declaration at ¶ 16. Since Plaintiffs were thereafter unable to provide any support for their claim that they had standing to pursue this

---

[5] Prior to the disclosure of the Jobim Music Agreement, Universal had not been aware of the existence of Jobim Music. Bart Declaration at ¶¶ 7-8. The Jobim Plaintiffs have now represented that they have produced all extant documents in their possession and Jobim Music's possession relating to Jobim Music's corporate existence and interest in Jobim's rights.

action and since the undisputed evidence showed that Jobim Music was the owner of the Universal Agreements and, thus, was the real party in interest under Federal Rule of Civil Procedure 17(a), on October 24, 2006, Universal formally objected to the Plaintiffs' status as sole plaintiffs in the case. Bart Declaration at ¶ 16. In that letter, Universal explained that since Jobim's contract rights had been transferred to Jobim Music pursuant to the Jobim Music Agreement, Jobim Music was the only party with standing to enforce the Universal Agreements. Plaintiffs responded on November 3, 2006, asserting for the first time that the Jobim Music Agreement had no effect on the ownership of Jobim's rights under the Universal Agreements since the Jobim Music Agreement concerned "nothing more than the administration and exploitation of the Brazilian copyrights in the Compositions in non-Universal territories." Bart Declaration at ¶ 17; Bart Declaration Ex. O. That assertion of course is contrary to the plain language of the Jobim Music Agreement which expressly transferred and assigned all copyrights and all rights to receive moneys from Jobim's catalogue, and contained absolutely no territorial limitation. *See* Bart Declaration Ex. E. Since Plaintiffs also recognized the weakness of their argument, they indicated that they would avail themselves of one of the procedures provided in Rule 17(a) to cure their real-party-in-interest problem – ratification. Bart Declaration at ¶ 17. Subsequently, on January 5, 2007, Plaintiffs filed a declaration by Jobim Music purporting to ratify the Plaintiffs' suit. Bart Declaration at ¶ 19.

## ARGUMENT

### I.  THE LEGAL STANDARD.

#### A.  Rule 17(a) Requirements.

Rule 17(a) requires that "[e]very action shall be prosecuted in the name of the real party in interest." The purpose of this Rule is "to require that the action be prosecuted in the name of the party, who, by the substantive law, has the right sought to be enforced." *Rock Drilling Local*

*Union No. 17 v. Mason Hanger Co.*, 217 F.2d 687, 693 (2d Cir. 1954).  When a plaintiff's status as the real party in interest is called into question, "[t]he plaintiff bears the burden of show[ing] that he has a substantive right to recover and thus is the real party in interest."  *OSrecovery, Inc. v. One Group Int'l, Inc.*, 380 F. Supp. 2d 243, 246 (S.D.N.Y. 2005) (internal quotation marks omitted; alteration in original).

Rule 17(a) allows plaintiffs to cure the failure to join the real party in interest in certain circumstances, by joining or substituting the real party in interest as plaintiff, or by obtaining a ratification of the action by the real party in interest.  *See* Fed. R. Civ. P. 17(a).  Both the question whether the existing plaintiffs are the real parties in interest, and whether they may employ one of Rule 17(a)'s cure procedures, may be decided as a matter of law in the context of a summary judgment motion.  *See OSrecovery*, 380 F. Supp. 2d at 249 (granting summary judgment against plaintiffs who were not real parties in interest and not entitled to cure the defect); *cf. Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber*, 407 F.3d 34, 49-50 (2d Cir. 2005) (affirming grant of motion to dismiss based on Rule 17(a)).

**B.**    **New York Substantive Law is Controlling.**

Under New York law[6], only parties to a contract and third-party beneficiaries may sue to enforce a contract.  *See, e.g., Parker & Waichman v. Napoli*, 29 A.D.3d 396, 398-99, 815

---

[6] In a diversity action such as this one, the identity of the party possessing the substantive right to be enforced is a question of state law.  *Stichting*, 407 F.3d at 48 ("[W]hile the question of in whose name a suit must be brought is procedural, that question must be answered with reference to substantive state law."); *see also Hanna v. Plumer*, 380 U.S. 460, 472-74 (1965) (holding that while federal, not state, procedural rules govern in diversity suits filed in federal court, federal procedural rules may not supersede state-law substantive provisions).  Because the Jobim Plaintiffs seek to enforce rights under a contract governed by New York law, the real party in interest must be determined by reference to New York state contract law.  *Stichting*, 407 F.3d at

N.Y.S.2d 71, 74 (1st Dep't 2006) (holding that in the absence of a claim for third-party beneficiary status, "only the parties to a contract have standing to sue for its breach"); *TeeVee Toons, Inc. v. Gerhard Schubert GmbH*, No. 00 Civ. 5189 (RCC), 2006 WL 2463537, at *3 (S.D.N.Y. Aug. 23, 2006) (discussing New York law).   Thus, in contract suits, only parties to a contract and third-party beneficiaries thereof are considered real parties in interest under Rule 17(a). *See, e.g., Wein v. Fensterstock*, No. 04 Civ. 4640, 2004 WL 2423684, at *1 (S.D.N.Y. Oct. 28, 2004) (holding that corporation in whose name contract was executed was real party in interest in contract suit).   Because Jobim Music, rather than the Plaintiffs, is a party to the Universal Agreements, only Jobim Music has a right to enforce the Agreements and is thus the real party in interest.

### C.     Summary Judgment Standard.

The Court may grant a motion for summary judgment if it determines that "there is no genuine issue of fact as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   In adjudicating a motion for summary judgment, the court must resolve all ambiguities in favor of the nonmoving party, *Schalk v. Transport Workers Union of America*, No. 03 Civ. 8045 (PAC), 2007 WL 1310171, at *2 (S.D.N.Y. May 3, 2007), although "[t]he nonmoving party may not rely on conclusory allegations or unsubstantiated speculation."   *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).   Rather, to establish a genuine issue of material fact, the opposing party "must produce specific facts indicating that a genuine factual issue exists."   *Id.* at 114 (internal quotation marks omitted).   "If the evidence [produced by the nonmoving party] is merely

---

48-50 (determining real party in interest in an action alleging claims under state contract law by ascertaining which parties possessed state-law right of action).

colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

This Court may also decide questions of Brazilian law – such as the import of the Jobim Music Agreement – as a matter of law.  *See* Fed. R. Civ. P. 44.1 ("The court's determination [of foreign law] shall be treated as a ruling on a question of law."); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2444 (3d ed. 1995) (district courts may grant summary judgment on questions of foreign law).  In so doing, the Court may rely on "any relevant material or source, including testimony." Fed. R. Civ. P. 44.1.  "[D]isagreement among legal experts on content, applicability, or interpretation of foreign law . . . does not create genuine issues of material fact for summary judgment purposes." *Rutgerswerke AG & Frendo S.P.A. v. Abex Corp.*, No. 93 Civ. 2914 (JFK), 2002 WL 1203836, at *16 (S.D.N.Y. June 4, 2002) (citing *Bassis v. Universal Line, S.A.*, 436 F.2d 64, 68 (2d Cir. 1970)).

## II.   JOBIM MUSIC IS THE REAL PARTY IN INTEREST UNDER THE UNIVERSAL AGREEMENTS, NOT THE PLAINTIFFS.

### A.   Jobim Assigned His Copyrights and Contract Rights to Jobim Music.

On its face, the Jobim Music Agreement is quite clear in memorializing the 1993 transfer by Jobim of his contract and copyright rights under the Universal Agreements to Jobim Music.[7] As a starting point, the Jobim Music Agreement is entitled a "Contract of Assignment of Financial Copyright Rights, Administration of Neighboring and Image Rights and Other Agreements," and Jobim is referred to throughout the Agreement as "ASSIGNOR" or "ASSIGNOR GRANTOR."  Bart Declaration Ex. E.  In accordance with the stated title, the

---

[7] This conclusion is also supported by Dr. João Müller, an expert in Brazilian copyright law with forty-two years' experience.  Dr. Müller opines in his declaration that the Jobim Music Agreement has precisely the effect that its plain text indicates – it assigned all of Jobim's interests in the Compositions (except unassignable moral rights) to Jobim Music.  Bart Declaration Ex. M at ¶ 4.

Jobim Music Agreement repeatedly uses language of assignment.  For example, Jobim "assign[ed] and transfer[ed]" to Jobim Music his "financial copyright rights in his entire musical work, as composer and lyricist"[8] (¶ 1) and "all amounts to which he is entitled as of the signing date of this assignment of rights" (¶ 3).  In other words, the Jobim Music Agreement effected a transfer of Jobim's contract rights and copyrights.  The Jobim Music Agreement further provides that the assignment "is for an indefinite term," unless Jobim revoked it or transferred the granted rights to another company or person (¶ 5), neither of which ever occurred.

By assigning to Jobim Music all amounts to which he was contractually entitled, Jobim transferred to Jobim Music all of his existing rights under all of his publishing contracts.  *See* Bart Declaration Ex. M at ¶ 4.  The broad language used – "all amounts to which [Jobim] is entitled" – was clearly designed to include all royalties and payments that Jobim received through his various publishing contracts and cannot be reconciled with Plaintiffs' newly minted argument that the Jobim Music Agreement is not an assignment but is merely an administration agreement.  Indeed, there is nothing in the Jobim Music Agreement that supports this argument.  That is because the rights in question were assigned outright.  Moreover, the Agreement demonstrates that the parties understood the difference between an assignment and a grant of administration rights.  Jobim specifically granted administration rights with respect to Jobim's "artistic and neighboring" rights in Clause Two.  The use of different language in Clause Two ("administrator; "proxies") from the assignment language in Clause Three, indicates that Clause Three involves far more than mere administration rights.  *See* Bart Declaration Ex. M at ¶¶ 7-8.  Thus, on its face Clause Three renders Jobim Music the assignee of, and successor to, Jobim's

---

[8] "Financial" copyright rights, also known as "patrimonial" rights, are the equivalent of the rights found in § 106 of the Copyright Act.  *See* 17 U.S.C. § 106.  In other words, financial rights are the rights to copy, adapt, and otherwise exploit the copyrighted work.  *See* Müller Declaration at ¶ 5.

rights and obligations under the Universal Agreements.  *See* Bart Declaration Ex. M at ¶ 8; *cf.*

*Jackson v. Broadcast Music, Inc.*, No. 04 Civ. 5948 (TPG), 2006 WL 250524, at *7, *9

(S.D.N.Y. Feb. 1, 2006) (stating that contract for "purchase" of plaintiff's copyrights could not

reasonably be read merely to convey administration rights in the copyrights).

Plaintiffs' other argument – that the Jobim Music Agreement is somehow territorially

restricted and thus not applicable to the Universal Agreements, *see* Bart Declaration Ex. O – is

similarly without merit.  Contrary to the Plaintiffs' assertion, there are no territorial limitations

contained within the Jobim Music Agreement – or within Brazilian law – that limits the

application of the Jobim Music Agreement to everything but the Universal Agreements.  *See*

Bart Declaration Ex. M at ¶ 10.

**B.    Subsequent Conduct Confirms that the Jobim Music Agreement Transferred Jobim's Copyrights and Contract Rights.**

Although the Plaintiffs now contend that Jobim Music received only administration rights

through the Jobim Music Agreement, both the Plaintiffs and the Brazilian probate court have

interpreted the Jobim Music Agreement as an assignment of Jobim's rights.  Perhaps most telling

is the fact that in subpublishing agreements executed by Jobim Music subsequent to the Jobim

Music Agreement (some of which were even subsequent to Jobim's death), Jobim Music has

represented that it is the "copyright owner" of Jobim's compositions, including the compositions

at issue in this suit. R. 56.1 Statement at ¶ 16; Bart Declaration Ex. K.  For instance, in a 1999

licensing agreement between Jobim Music and another of the Plaintiffs' corporations, Corcovado

Music, Jobim Music represented that it was the owner of the "worldwide copyrights of the

Compositions," and expressly reserved to itself all rights flowing from those copyrights.  R. 56.1

Statement at ¶ 19; Bart Declaration Ex. L.  Similarly, a 1994 agreement in which Jobim Music

granted a publishing license to Taiyo Music states that Jobim Music is the "copyright owner" of

the listed works, and again reserves to Jobim Music all rights in the "worldwide copyrights" in the Compositions. R. 56.1 Statement at ¶ 16; Bart Declaration Ex. K, at Intro., ¶ 2(a). Jobim Music also warranted that it was the publisher of the Compositions "pursuant to agreement with ANTONIO CARLOS JOBIM." Bart Declaration Ex. K at ¶ 17. Notably, the Jobim Music-Taiyo Music agreement is signed on behalf of Jobim Music by Sylvia Gandelman, the Brazilian attorney who drafted and oversaw the execution of the Jobim Music Agreement. Bart Declaration Ex. K.

Thus, the Plaintiffs and the lawyer responsible for the Jobim Music Agreement have treated Jobim Music as though it is the owner of the copyrights in Jobim's works, which is of course consistent with the plain language of the Jobim Music Agreement. That conduct confirms that the Jobim Music Agreement has the very meaning that the Plaintiffs are now trying to deny in this action: an assignment of copyright and other property rights from Jobim to Jobim Music.

In addition, the Brazilian probate court that determined the value of Jobim Music upon Jobim's death also interpreted the Jobim Music Agreement as assigning Jobim's copyrights to Jobim Music. The court-appointed accountant and legal expert included in his valuation of Jobim Music's assets for probate purposes the amounts generated through "collection of copyright rights" from the date on which the Jobim Music Agreement (the "Contract of Assignment of Copyright Rights") was executed until Jobim's death. R. 56.1 Statement at ¶ 17; Bart Declaration Ex. H at 11343. In other words, the valuation included as part of the assets of Jobim Music, the amounts collected from the exploitation of Jobim's copyrights, thus indicating that the probate court viewed Jobim Music as the owner of these amounts. The Plaintiffs never took issue with the probate court's characterization of Jobim Music's assets. R. 56.1 Statement at ¶ 18.

**C.   Ratification by Jobim Music is Not a Proper Cure for the Plaintiffs' Failure to Join the Real Party in Interest.**

The Plaintiffs' proposed cure for their failure to join the real party in interest –

ratification of the action by Jobim Music – is not available here because allowing ratification

would impermissibly expand New York substantive contract-law rights.  Since the Jobims are

not parties to the Universal Agreements, they have no right under New York law to prosecute

this suit.  Indeed, if the Jobims filed this suit in New York state court, it would be subject to

dismissal.  Having filed in federal court, the Jobims are attempting to use Rule 17(a)'s cure

procedures as an end-run around this limitation of New York contract law.  However, they

cannot do this.

Under the Rules Enabling Act, Rule 17(a) and other federal procedural rules may not be

employed to "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072.  As noted

above, in a diversity suit such as this one, the identity of the party that has the right to bring a suit

is determined by state substantive law.  The Rules Enabling Act therefore forbids Rule 17(a)

from being applied in a way that "supersede[s] state law regarding who holds the substantive

right of action." *Stichting*, 407 F.3d at 48 n.7.  Specifically, where the plaintiff is not the real

party in interest, "[t]he procedural mechanisms set forth in Rule 17(a) for ameliorating real party

in interest problems may not, under the Rules Enabling Act . . . be employed to expand

substantive rights." *Id*. at 49.  Thus, in any case in which the plaintiffs propose to utilize one of

Rule 17(a)'s cure procedures, the court must determine whether that cure runs afoul of the Rules

Enabling Act by expanding or altering state-law substantive rights.  *Cf. Del Re v. Prudential*

*Lines, Inc.*, 669 F.2d 93, 96 (2d Cir. 1982).

Permitting the Plaintiffs to prosecute this suit as a result of Jobim Music's ratification

would work just such an expansion of state-law rights.  Ratification, unlike joinder or

13

substitution, does not address the real-party-in-interest defect by making the substantive-right holder a party to the action. *See Del Re*, 669 F.2d at 97-98 (emphasizing in disallowing ratification, that employer's ratification of action did not make employer, the real party in interest, a party to the suit); *see also* June F. Entman, *Compulsory Joinder of Compensating Insurers: Federal Rule of Civil Procedure 19 and the Role of Substantive Law*, 45 Case Wes. L. Rev. 1, 65 (1994) ("Nowhere do the federal rules define the status of a ratifier in such a way that ratification can be considered the functional equivalent of party status.") Thus, ratification is not available to Plaintiffs since it would enable them to continue to prosecute this action as the sole plaintiffs, despite their lack of any substantive right under New York law to enforce the Universal Agreements.

The Second Circuit has recognized the tension that exists in certain circumstances between the ratification procedure and substantive limitations on who has the right to sue, and has consistently refused to allow plaintiffs to utilize the ratification procedure provided in Rule 17(a) where doing so would expand substantive rights. In *Eden Toys, Inc. v. Florelee Undergarment Co.*, for instance, the court rejected an attempt to use ratification to circumvent limitations on who may institute a suit under the Copyright Act. 697 F.2d 27, 32 & n.3 (2d Cir. 1982), superseded by statute on other grounds, Fed. R. Civ. P. 52(a), as recognized in *Weissmann v. Freeman*, 868 F.2d 1313 (2d Cir. 1989). There, a non-exclusive licensee of the rights to the character "Paddington Bear" attempted to bring a copyright infringement suit, even though the Copyright Act provided that only copyright holders and exclusive licensees were entitled to sue to enforce copyright rights. *Id.* (citing 17 U.S.C. § 501(b) (Supp. IV 1980)). The court refused to permit the copyright holder to ratify the licensee's suit, concluding: "While F. R. Civ. P. 17(a) ordinarily permits the real party in interest to ratify a suit brought by another party, the Copyright

14

Law is quite specific in stating that only the owner of an exclusive right under a copyright may bring suit." *Id.* at 32 n.3 (internal citations and quotation marks omitted). Thus, where the real-party-in-interest defect arises from substantive-law limitations on which parties may bring suit, ratification is not available to cure the defect. *See Stichting*, 407 F.3d at 47 ("[T]he procedures set forth in Rule 17(a) are inapposite in situations where the real party in interest defect is created by lack of compliance with state substantive law.").

Similarly, in *Stichting*, the Second Circuit refused to allow the plaintiff to use ratification to cure a real-party-in-interest defect that arose from the fact that the ratifying party's assignment of claims to the plaintiff was invalid under state law. Because the plaintiff was not the real party in interest as a result of state substantive law, the court stated: "In such a situation, ratification under Rule 17(a) would allow *Stichting* to accomplish through operation of the Federal Rules precisely what it could not accomplish under New Jersey law. This, the district court properly determined, is not permitted." 407 F.3d at 49; *Scheufler v. General Host Corp.*, 126 F.3d 1261, 1272 (10th Cir. 1997) (affirming district court's refusal to allow tenants to ratify the plaintiff-landlord's suit, because "the property interests of a landowner and tenant are distinct, and one may not recover damages based upon the other's interests"); *United States for Use and Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074-75 (9th Cir. 1989) (refusing to allow ratification where party without a substantive cause of action filed suit). Thus, it is well-established that ratification is not available where it would work an expansion of substantive-law rights.

In sum, the Jobims are asking this Court to allow this action to be prosecuted not by the entity that holds the rights in the Universal Agreements, but by individuals who are strangers to the Agreements, who have no rights or obligations under the Agreements, and no right to receive the benefits of the Agreements. Because "the real party in interest defect is created by lack of

15

compliance with state substantive law," *Stichting*, 407 F.3d at 47, Jobim Music's proffered

ratification is invalid and must not be allowed. *See* Entman, *supra*, at 65 (noting that ratification

is "ill advised" when it allows improper plaintiffs to proceed with an action).[9]

**D.   The Other Cure Procedures Provided by Rule 17(a) are Not Available to the Plaintiffs.**

Joinder or substitution of Jobim Music as plaintiff – the other cure procedures authorized

by Rule 17(a) – are also not available to the Plaintiffs.  Joinder fails for the same reason that

ratification fails: it leaves the Plaintiffs as parties prosecuting claims they have no standing to

pursue and thus violate the Rules Enabling Act.  In *Stichting*, at 407 F.3d 34, 49, the Second

Circuit refused to permit a joinder of the real party in interest because it was perceived as "an

end-run around New Jersey's assignment ban."  Substitution is not available because the Jobim

Plaintiffs have abjectly refused to step aside as Plaintiffs.  Thus, any discussion of substitution is

academic.

Moreover, neither joinder nor substitution are available because Rule 17(a)'s cure

procedures may be used only where the plaintiff's failure to join the real party in interest is the

result of an honest and understandable mistake.  Because the Plaintiffs have not shown that such

---

[9] Ratification is also improper here because it would prejudice Universal by exposing it to multiple lawsuits.  To be sufficient under Rule 17(a), a ratification must be legally binding on the ratifying party. *See Motta v. Res. Shipping & Enters. Co.*, 499 F. Supp. 1365, 1371 (S.D.N.Y. 1980).  There is substantial doubt, however, that Jobim Music would be subject to this Court's personal jurisdiction, and therefore it is unclear whether Jobim Music would effectively be bound by its ratification. *See* Bart Declaration Ex. Q at 155 (Ana Jobim stated that Jobim Music does not conduct business, own property, or maintain employees in New York).  If the ratification is not enforceable against Jobim Music by this Court, Jobim Music would be free to breach its ratification by filing suit against Universal in Brazil (or some other forum other than the United States).  Allowing ratification in this situation would therefore contravene Rule 17(a)'s purpose of protecting defendants from future duplicative actions, *see* Fed. R. Civ. P. 17(a) advisory committee's note, and would prejudice Universal. *See Motta*, 499 F. Supp. at 1374-75 (prejudice to defendant should be considered in determining whether to allow ratification).

shown that such is the case here, the cure provisions of Rule 17(a) may not be invoked and this Court should dismiss the suit.

As the Second Circuit has noted: "The Advisory Committee made clear in its accompanying Note that the provision allowing ratification, joinder, and substitution 'is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made.'" *Del Re*, 669 F.2d at 96 (quoting Fed. R. Civ. P. 17(a) advisory committee's note). Where the identity of the proper plaintiff was not difficult to determine, and the plaintiffs knew or should have known that they were not the real parties in interest, Rule 17(a) does not permit a cure. *OSrecovery, Inc.*, 380 F. Supp. 2d at 248-49. A mistake as to the identity of the real party in interest therefore must be both honest and reasonable before cure is allowed. *See Lans v. Gateway 2000 Inc.*, 84 F. Supp. 2d 112, 119-22 (D.D.C. 1999), aff'd, 252 F.3d 1320 (Fed. Cir. 2001).

The burden of demonstrating that a real-party-in-interest defect is the result of an honest and understandable mistake rests with the plaintiffs. *See OSrecovery*, 380 F. Supp. 2d at 248-49; *Automated Info. Processing, Inc. v. Genesys Solutions Group, Inc.*, 164 F.R.D. 1, 3-4 (E.D.N.Y. 1995); *Feist v. Consolidated Freightways Corp.*, 100 F. Supp. 2d 273, 275 (E.D. Pa. 1999), aff'd, 216 F.3d 1075 (3d Cir. 2000) (unpublished table decision). This placement of the burden flows from the fact that it is the plaintiffs' duty to verify the allegations in their complaint and ensure, before filing suit, that the complaint names the proper parties. *See Lans*, 84 F. Supp. 2d at 120 & n.7. Particularly where the information necessary to determine the identity of the real party in interest lies within the control of the plaintiffs, they must come forward with evidence explaining the "reasonable basis" on which they believed they were the proper parties. *Advanced*

*Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997); *Automated*, 164 F.R.D. at 3.

Here, the Plaintiffs cannot demonstrate that their failure to file this suit in the name of Jobim Music was the result of an honest and understandable mistake. The overwhelming objective evidence demonstrates that the Plaintiffs were well aware of the effect of the Jobim Music Agreement, and conducted themselves accordingly. Plaintiffs, as sophisticated parties with experience in the music industry, cannot claim that they did not understand the effect of assignment contracts like the Jobim Music Agreement. The Agreement is a straightforward, explicit and an unequivocal assignment of Jobim's rights in his contracts to Jobim Music. *See* Bart Declaration Ex. M at ¶¶ 4, 7-9. *See Automated*, 164 F.R.D. at 3. Moreover, Plaintiffs are experienced in interpreting and implementing music-industry contracts, having administered Antonio Jobim's rights and co-owned both Jobim Music and Corcovado Music since his death. R. 56.1 Statement at ¶¶ 20-22. Paulo Jobim in particular is a professional composer-performer who has extensive experience with, and an understanding of, music-industry practices and rights administration. R. 56.1 Statement at ¶ 22. Thus, it is simply not credible that persons experienced in the music business could misapprehend or be unaware of the explicit assignment language in the Jobim Music Agreement.

In addition, the Brazilian probate court's interpretation of the Jobim Music Agreement as transferring Jobim's income to Jobim Music certainly gave Plaintiffs – particularly Ana Jobim, who was executor of Jobim's will and the surviving part-owner of Jobim Music, Bart Declaration Ex. Q at 150-51 – notice of the effect of the Jobim Music Agreement. *See* Bart Declaration Ex. H at 11343 (counting royalty income as part of Jobim Music's assets, and calculating earnings from "the period from September 1993 to December 1994, i.e., from the

month in which the Contract of Assignment of Copyright Rights was signed to the month of

[Jobim's] death").  Tellingly, Plaintiffs never contradicted the valuation or otherwise acted to

investigate its assessment of Jobim Music's assets.

Any doubt as to the Plaintiffs' knowledge of the impact of the Jobim Music Agreement is

dissipated by the fact that, as owners and directors of Jobim Music, the Plaintiffs caused Jobim

Music to enter into publishing contracts in which Jobim Music represented that it was the owner

of Jobim's "worldwide copyrights."  R. 56.1 Statement at ¶¶ 16, 19.  Thus, the Plaintiffs have

always understood that the Jobim Music Agreement – which provides that Jobim "assign[ed] and

transfer[red]" his copyright rights to Jobim Music, *see* Bart Declaration Ex. E – indeed

accomplished an assignment of Jobim's copyright rights.  Given that the Jobim Music

Agreement employs precisely the same assignment language with respect to Jobim's contract

rights, *see* Bart Declaration Ex. E, it is not possible that Plaintiffs could have failed to

comprehend that the Agreement also conveyed Jobim's contract rights.

In sum, the objective evidence demonstrates that the Plaintiffs knew that Jobim Music

owned Jobim's rights in the Universal Agreements.  *See Lans*, 84 F. Supp. 2d at 121-22 (on

summary judgment motion, rejecting plaintiff's assertions that he was not aware of assignment in

light of plaintiff's subsequent actions and documentary evidence, and holding that Rule 17(a)'s

cure procedures were not available).  Their failure to join or substitute Jobim Music as a party

was not the result of any mistake or difficulty identifying the real party in interest.

As a matter of law, therefore, Plaintiffs' failure to join the real party in interest is neither

an honest mistake nor an understandable one.  The Plaintiffs consequently should not be

permitted to take advantage of any of the cure procedures provided in Rule 17(a).  *See Del Re*,

669 F.2d at 96-97 (refusing to allow cure under Rule 17(a) in part because "[n]o difficulty,

confusion or mistake ever existed in the present case regarding the identity of the party in whose name the suit must be brought").

## CONCLUSION

Plaintiffs are not the real parties in interest in this litigation, in violation of Rule 17(a). As a matter of law, none of the cure procedures provided in Rule 17(a) are available here, and Universal is entitled to summary judgment.

Dated:  July 26, 2007

Respectfully submitted,

JENNER & BLOCK LLP


By: _____ s/Bart _____
Andrew H. Bart (AB-6724)
Carletta F. Higginson (CH-6941)
919 Third Ave.
37th Floor
New York, NY 10022-3908
(212) 891-1600

Steven B. Fabrizio (SF-8639)
Ginger D. Anders (GA-1178)
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005
(202) 639-6000

*Attorneys for Defendant*
*Songs of Universal Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                            :
ANA BEATRIZ LONTRA JOBIM;                   :        No. 05 CIV 3527 (PAC)
MARIA LUIZA ELENA LONTRA                    :
JOBIM; PAULA HERMANNY JOBIM;                :
and ELIZABETH HERMANNY JOBIM,               :
                                            :
                          Plaintiffs,       :
                                            :
             -against-                      :
                                            :
SONGS OF UNIVERSAL INC.,                    :
                                            :
                          Defendant.        :
-----------------------------------------------------------x

## CERTIFICATE OF SERVICE

I, Andrew H. Bart, certify that true and correct copies of the Memorandum of Law in Support of Defendant Songs of Universal, Inc.'s Motion for Summary Judgment were served upon John J. Rosenberg and Matthew H. Giger, Rosenberg & Giger P.C., 488 Madison Ave., New York, New York 10022, counsel for Plaintiffs, via this Court's electronic filing system on this 26th day of July, 2007.

_____
Andrew H. Bart

21